Ahmet Gökhan Kara
8 The Green, Ste 26536
Dover, DE 19901, USA
ahmet.g.kara@gmail.com
+90 532 213 15 65
Plaintiff, in propria persona (pro se)

X FILED ___ LODGED
___ RECEIVED ___ COPY
NOV 12 2026
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY ___ DEPUTY

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

CV26-10374-PHX-JAT

| | |
|---|---|
| Ahmet Gökhan Kara;<br>Plaintiff,<br>v.<br>Zero Technologies, LLC;<br>Defendant. | No. CV-26-______-PHX-____<br><br>COMPLAINT FOR DECLARATORY JUDGMENT AND RELIEF UNDER 15 U.S.C. § 1114(2)(D)(v) AND 28 U.S.C. §§ 2201–2202<br><br>(Domain names <zerofilterstore.com> and <zerofilteronline.com>; WIPO Case Nos. D2026-4848 and D2026-4899) |

Plaintiff Ahmet Gökhan Kara ("Plaintiff"), appearing without an attorney, alleges as follows against Defendant Zero Technologies, LLC ("Defendant"):

**NATURE OF THE ACTION**

1. This is an action by a domain name registrant under Section 32(2)(D)(v) of the Lanham Act, 15 U.S.C. § 1114(2)(D)(v), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, for a declaration that Plaintiff's registration and use of the domain names <zerofilterstore.com> and <zerofilteronline.com> (together, the "Domain Names") is not unlawful under the Lanham Act, and for an order that the Domain Names not be transferred to Defendant.

2. On November 3, 2026, a single panelist appointed by the WIPO Arbitration and Mediation Center ("WIPO"), in two administrative proceedings brought by Defendant under the Uniform Domain Name Dispute Resolution Policy

(“UDRP”), WIPO Case Nos. D2026-4848 and D2026-4899, ordered that the Domain Names be transferred to Defendant. True copies of the two decisions are attached as Exhibit A (D2026-4848, <zerofilterstore.com>) and Exhibit B (D2026-4899, <zerofilteronline.com>).

3. A UDRP decision is not binding on this Court and is entitled to no deference here; the Court decides independently whether the registrant’s registration and use of a domain name is lawful under the Lanham Act. *See Barcelona.com, Inc. v. Excelentisimo Ayuntamiento de Barcelona*, 330 F.3d 617 (4th Cir. 2003); *Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14 (1st Cir. 2001); *Dluhos v. Strasberg*, 321 F.3d 365 (3d Cir. 2003); *Hawes v. Network Solutions, Inc.*, 337 F.3d 377 (4th Cir. 2003).

4. Under paragraph 4(k) of the UDRP, the registrar will not implement a transfer decision if, within ten business days after being informed of the decision, it receives official documentation that the registrant has commenced a lawsuit against the complainant in a jurisdiction to which the complainant has submitted. Plaintiff brings this action in such a jurisdiction, within that period, and on the merits.

**PARTIES**

5. Plaintiff Ahmet Gökhan Kara is an individual residing in Istanbul, Türkiye. Plaintiff is the registrant of record of both Domain Names, which are registered through the registrar GoDaddy.com, LLC (“GoDaddy”). Plaintiff is also the sole member of Zero Filter Online LLC, a Delaware limited liability company formed on July 20, 2023 (Delaware File No. 7578972).

6. Upon information and belief, Defendant Zero Technologies, LLC is a Delaware limited liability company with its principal place of business at 7 Neshaminy Interplex, Suite 116, Trevose, Pennsylvania 19053, as Defendant itself stated in its UDRP complaints. Defendant was the complainant in both UDRP proceedings.

## JURISDICTION

7. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) and 15 U.S.C. § 1121, because Plaintiff's claim arises under the Lanham Act, 15 U.S.C. §§ 1114(2)(D)(v) and 1125(d), and under 28 U.S.C. §§ 2201–2202.

8. An actual, substantial, and immediate controversy exists between the parties. Defendant has accused Plaintiff, in writing, of registering and using the Domain Names in bad faith to trade on the goodwill of Defendant's trademarks; has obtained decisions ordering the transfer of the Domain Names; and has petitioned the United States Patent and Trademark Office to cancel the U.S. registration of the ZEROFILTER ONLINE mark owned by Plaintiff's company, Zero Filter Online LLC. Absent relief from this Court, the Domain Names will be transferred to Defendant.

## PERSONAL JURISDICTION AND VENUE

9. In each of its UDRP complaints (paragraph 15, "Mutual Jurisdiction," made under paragraph 3(b)(xii) of the Rules for Uniform Domain Name Dispute Resolution Policy), Defendant stated that, "in accordance with Paragraph 3(b)(xii) of the Rules, the Complainant will submit, with respect to any challenges that may be made by the Respondent to a decision by the Administrative Panel to transfer or cancel the domain name that is the subject of this Complaint, to the jurisdiction of the courts at the location of the principal office of the concerned registrar." The same statement appears in both UDRP complaints.

10. The concerned registrar is GoDaddy.com, LLC, whose principal office is located at 100 S. Mill Ave., Suite 1600, Tempe, Maricopa County, Arizona 85281, as stated in GoDaddy.com, LLC's published Subpoena Policy. GoDaddy's parent company, GoDaddy Inc., reports its principal executive offices at the same address (Annual Report on Form 10-K for the fiscal year ended December 31, 2025). This action is a challenge by the Respondent (Plaintiff) to the panel's

transfer decisions. Defendant has therefore consented to the personal jurisdiction of this Court for purposes of this action.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because the Domain Names, which are the property that is the subject of this action, are registered with a registrar located in this District, *see* 15 U.S.C. § 1125(d)(2)(C), and because any transfer ordered by the UDRP panel would be implemented by that registrar in this District. Venue is also proper by reason of Defendant's consent described above. Assignment to the Phoenix Division is proper because the registrar is located in Maricopa County. LRCiv 77.1(a).

## FACTUAL ALLEGATIONS

### A. Plaintiff's Domain Names and the ZEROFILTER ONLINE business

12. Plaintiff registered <zerofilteronline.com> through GoDaddy on January 13, 2023, for an online store selling replacement water filters.

13. On July 19, 2023, Plaintiff filed Canadian trademark Application No. 2270325 for the word mark ZEROFILTER ONLINE for water-filtration goods.

14. On July 20, 2023, Plaintiff formed Zero Filter Online LLC and personally registered <zerofilterstore.com> through GoDaddy for use in connection with the ZEROFILTER ONLINE brand.

15. On July 28, 2023, Plaintiff filed Turkish trademark Application No. 2023/097552 for a ZEROFILTER ONLINE logo mark, and on July 31, 2023, Zero Filter Online LLC filed U.S. Application Serial No. 98108911 for the standard-character mark ZEROFILTER ONLINE in International Class 11.

16. As archived by the Internet Archive, the website at <zerofilteronline.com> displayed the ZEROFILTER ONLINE name and offered water filters for sale by July 22, 2023, and the website at <zerofilterstore.com> identified Zero Filter Online LLC as its operator by September 24, 2023.

17. Since 2023, the Domain Names have been continuously used, by Plaintiff and by Zero Filter Online LLC with Plaintiff's authorization, for websites

associated with the ZEROFILTER ONLINE brand. The website at <zerofilterstore.com> prominently states, on its home page and its "About Us" page, that "Zero Filter Online is an independent brand and is not affiliated with ZeroWater . . . ."

18. Plaintiff has never offered to sell, rent, or otherwise transfer either Domain Name to Defendant or to any third party for any consideration.

19. Plaintiff registered the Domain Names in his own name. As each UDRP decision records, in response to WIPO's request for registrar verification the registrar disclosed Plaintiff's registrant and contact information for the Domain Names.

20. Prior to October 2026, Plaintiff did not receive from Defendant any cease-and-desist letter or other objection concerning the Domain Names, by any means.

**B. The ZEROFILTER ONLINE trademark registrations**

21. Turkish Trademark Registration No. 2023/097552 (ZEROFILTER ONLINE and design), filed July 28, 2023, issued on January 16, 2025, to Plaintiff, AHMET GÖKHAN KARA.

22. Canadian Trademark Registration No. TMA1,292,011 (ZEROFILTER ONLINE), filed July 19, 2023, issued on February 17, 2025, to Plaintiff (recorded as "Ahmet Kara").

23. U.S. Trademark Registration No. 7,995,613 (ZEROFILTER ONLINE, standard characters), filed July 31, 2023, issued on the Principal Register on October 21, 2025, to Zero Filter Online LLC, the company of which Plaintiff is the sole member, for goods in International Class 11, claiming first use in commerce in September 2023. The word "ONLINE" is disclaimed.

24. The U.S. application was examined by the USPTO. The USPTO issued a non-final Office action on April 2, 2024; a response was filed on June 28, 2024; the application was approved for publication on July 15, 2024; and it was

published for opposition on August 20, 2024. Defendant did not oppose the application, and the USPTO issued a notice of allowance on October 15, 2024. In the April 2, 2024 Office action, the examining attorney stated that the examining attorney "has searched the USPTO database of registered and pending marks and has found no conflicting marks that would bar registration under Trademark Act Section 2(d)." The Office action raised only requirements unrelated to likelihood of confusion, including a disclaimer of the word "ONLINE." The USPTO thus approved ZEROFILTER ONLINE without refusing it under Section 2(d) over any of Defendant's ZEROWATER registrations, including Reg. Nos. 2,802,616 and 3,808,040, which were then registered. (Ex. F.)

25. Under 15 U.S.C. §§ 1057(b) and 1115(a), U.S. Registration No. 7,995,613 is prima facie evidence of the validity of the registered mark, of the registrant's ownership of the mark, and of its exclusive right to use the mark in commerce for the registered goods.

26. On October 22, 2026, Defendant filed a petition to cancel U.S. Registration No. 7,995,613 (TTAB Cancellation No. 92093171). That proceeding is pending, and no decision has been made. The registration remains valid and subsisting.

**C. Defendant's marks and the term "zero"**

27. In its UDRP complaints, Defendant relied on U.S. registrations for ZEROWATER (Reg. No. 2,802,616), IF IT'S NOT ALL ZEROS – IT'S NOT ZEROWATER (Reg. No. 3,808,040), ZEROWATER TECHNOLOGY (Reg. No. 8,327,439), and ZEROWATER TECHNOLOGY 5-STAGE (Reg. No. 8,327,462). Defendant did not rely on any registration for the term ZERO alone. The applications for Reg. Nos. 8,327,439 and 8,327,462 were filed in November 2024, more than one year after both Domain Names were registered.

28. Neither Domain Name contains the mark ZEROWATER or the word "water." <zerofilteronline.com> consists of ZEROFILTER ONLINE, a mark

registered to Plaintiff in Türkiye and Canada; in the United States, it is the ZEROFILTER ONLINE mark owned by Plaintiff's company, Zero Filter Online LLC. <zerofilterstore.com> consists of the ZEROFILTER element of that mark and the generic word "store."

29. "Zero" is a common English word. Upon information and belief, "zero" is widely used in the water-filtration field to describe the result or performance of a product (for example, "zero" contaminants or dissolved solids), and numerous third parties use or have registered marks containing ZERO for water-filtration and related goods in International Class 11, including the following live registrations on the USPTO Principal Register, each owned by a party other than Defendant or Plaintiff and each covering water filtration, purification, or treatment goods (status per USPTO TSDR, November 3, 2026):

(a) ZERO, Reg. No. 4,649,175 (Zenpure Corporation): filtering and purifying units for liquid filtration and purification;

(b) ZERO BIG, Reg. No. 6,283,925 (Tianjin Bright Sight Commerce Co., Ltd.): filters for drinking water; water filtering and purifying apparatus;

(c) ZERO GAUGE, Reg. Nos. 8,070,709 and 8,070,710 (Guangzhou Xiangsheng Technology Co., Ltd.): filters for drinking water; water filters; reverse osmosis filtration units;

(d) CLEAN ZERO, Reg. No. 7,341,597 (Craftex Cleaning Systems Limited): water filtration and reverse osmosis units;

(e) SPOT ZERO, Reg. No. 3,586,788 (Elite Marine Yacht Services, LLC): reverse osmosis water filtration units;

(f) ZEROWASTE, Reg. No. 3,151,187 (Watts Regulator Co.): water filtration units and water purification units;

(g) ZERODESAL, Reg. No. 7,844,658 (Crystal Lagoons Technologies, Inc.): water desalination and water purification units;

(h) ZEROMIX, Reg. No. 6,416,392 (Xiamen Bathmaster Household Products Co., Ltd.): apparatus for filtering drinking water, among other goods;

(i) STEP ZERO OF YOUR SELF-CARE ROUTINE, Reg. No. 7,875,245 (Weddell Water LLC): water filtering apparatus; water filters;

(j) TOWARDS NET ZERO, Reg. No. 7,839,080 (Kubota Corporation): water filtering apparatus; membrane filtration units for water treatment, among other goods.

30. Because "zero" is common and descriptive in this field, and is used by many others, Defendant cannot claim exclusive rights in the term "zero" standing alone, and consumers distinguish ZERO-formative marks by their other elements, such as WATER in Defendant's marks and FILTER ONLINE in the ZEROFILTER ONLINE mark.

**D. The UDRP proceedings and decisions**

31. Defendant filed a UDRP complaint concerning <zerofilterstore.com> with WIPO on October 23, 2026 (D2026-4848) and a UDRP complaint concerning <zerofilteronline.com> on October 27, 2026 (D2026-4899). Plaintiff, without counsel, filed a Response in each proceeding on October 29, 2026.

32. WIPO appointed the same sole panelist in both proceedings on November 2, 2026, and the panelist issued both decisions on November 3, 2026, ordering that the Domain Names be transferred to Defendant. WIPO informed the parties and the registrar of the decisions on November 3, 2026.

33. UDRP proceedings are summary and conducted on written submissions only. There is no discovery, no testimony, no cross-examination, and no hearing.

34. In both decisions, the panelist ordered the transfer of the Domain Names notwithstanding that neither Domain Name contains the word "water" and notwithstanding Plaintiff's and his company's trademark registrations for

ZEROFILTER ONLINE in the United States, Canada, and Türkiye, filed in 2023, years before Defendant initiated any proceeding.

35. The applications for those registrations were all filed in July 2023, more than three years before Defendant first asserted any claim against Plaintiff concerning the Domain Names. Although the panelist characterized those filings as a "defensive move," a trademark application filed years before any dispute, and before any assertion of rights by Defendant, cannot have been a "defensive move" to prevent Defendant from exercising rights that Defendant had not asserted.

36. The ZEROFILTER ONLINE registrations in Türkiye and Canada (owned by Plaintiff) and in the United States (owned by Plaintiff's company, Zero Filter Online LLC) were each examined and issued by the respective national trademark office. None has been cancelled or invalidated.

37. The Domain Names are locked at the registrar, preventing their transfer, update, or deletion by Plaintiff, and the UDRP decisions order that the Domain Names be transferred to Defendant. As of November 3, 2026, the public registry (RDAP) records for both Domain Names show the statuses "client transfer prohibited," "client update prohibited," "client delete prohibited," and "client renew prohibited," with GoDaddy as registrar. Unless GoDaddy receives official documentation of this action within ten business days after it was informed of the decisions, GoDaddy will implement the transfers.

38. The UDRP is a policy implemented by GoDaddy under its registration agreement with Plaintiff and its accreditation by the Internet Corporation for Assigned Names and Numbers. It is a "reasonable policy" of the kind described in 15 U.S.C. § 1114(2)(D)(ii)(II).

39. Defendant has notice of this action and will be served with the summons and this Complaint under Fed. R. Civ. P. 4.

**COUNT I**

**Declaratory Judgment and Relief under 15 U.S.C. § 1114(2)(D)(v): Registration and Use Not Unlawful under the Lanham Act**

40. Plaintiff incorporates the allegations of the preceding paragraphs.

41. Plaintiff is the registrant of the Domain Names.

42. The Domain Names have been suspended or disabled under the registrar's lock and have been ordered transferred under the UDRP, a policy implemented by GoDaddy as described in 15 U.S.C. § 1114(2)(D)(ii)(II).

43. Defendant, the trademark owner that prompted those actions, has notice of this action.

44. Plaintiff's registration and use of the Domain Names is not unlawful under the Lanham Act, including 15 U.S.C. § 1125(d), because Plaintiff did not register, traffic in, or use the Domain Names with a bad-faith intent to profit from Defendant's marks, and because the Domain Names are not identical or confusingly similar to Defendant's marks.

45. Under the factors in 15 U.S.C. § 1125(d)(1)(B)(i), among other things: (a) Plaintiff and his company have trademark rights in ZEROFILTER ONLINE, registered in Türkiye, Canada, and the United States; (b) the Domain Names consist of that mark and of the name by which Plaintiff's business is commonly identified; (c) the Domain Names have been used in connection with the bona fide offering of goods beginning in 2023, years before any dispute; (d) Plaintiff has never offered to sell the Domain Names; and (e) the Domain Names do not incorporate the mark ZEROWATER.

46. Under 15 U.S.C. § 1125(d)(1)(B)(ii), bad-faith intent cannot be found where the registrant believed, and had reasonable grounds to believe, that the use of the domain name was a fair use or otherwise lawful. Plaintiff believed, and had reasonable grounds to believe, that his use was lawful, including because the

ZEROFILTER ONLINE mark was examined and registered by national trademark offices in Türkiye, Canada, and the United States.

47. Plaintiff's registration and use of the Domain Names themselves also does not violate 15 U.S.C. § 1114(1) or § 1125(a), because the Domain Names are not likely to cause confusion as to source, sponsorship, or affiliation.

48. Plaintiff is therefore entitled, under 15 U.S.C. § 1114(2)(D)(v), to a declaration that his registration and use of the Domain Names is not unlawful under the Lanham Act, and to injunctive relief, including an order that the Domain Names not be transferred to Defendant and remain registered to Plaintiff, or, if transferred, be returned to Plaintiff.

**PRAYER FOR RELIEF**

Plaintiff respectfully asks the Court to enter judgment in his favor and against Defendant, as follows:

A. Declaring that Plaintiff's registration and use of the domain names <zerofilterstore.com> and <zerofilteronline.com> is not unlawful under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, including 15 U.S.C. § 1125(d);

B. Enjoining Defendant and its officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them who receive actual notice of the order, from seeking or effecting the transfer of the Domain Names under the decisions in WIPO Case Nos. D2026-4848 and D2026-4899;

C. Ordering, under 15 U.S.C. § 1114(2)(D)(v), that the Domain Names be unlocked, reactivated, and not transferred to Defendant, and remain registered to Plaintiff (or, if either Domain Name has been transferred, that it be reactivated and transferred back to Plaintiff);

D. Awarding Plaintiff his costs of this action; and

E. Granting such other and further relief as the Court deems just and proper.

DATED this 6 day of November, 2026.

Ahmet Gökhan Kara
Plaintiff, in propria persona (pro se)
8 The Green, Ste 26536
Dover, DE 19901, USA
ahmet.g.kara@gmail.com
+90 532 213 15 65

## INDEX OF EXHIBITS

Exhibit A – Administrative Panel Decision, WIPO Case No. D2026-4848 (<zerofilterstore.com>), November 3, 2026

Exhibit B – Administrative Panel Decision, WIPO Case No. D2026-4899 (<zerofilteronline.com>), November 3, 2026

Exhibit C – U.S. Trademark Registration No. 7,995,613 (ZEROFILTER ONLINE)

Exhibit D – Canadian Trademark Registration No. TMA1,292,011 (ZEROFILTER ONLINE)

Exhibit E – Turkish Trademark Registration No. 2023/097552, with English translation

Exhibit F – USPTO Office Action (April 2, 2024), U.S. Application Serial No. 98108911 (ZEROFILTER ONLINE)

# EXHIBIT A

WIPO Case No. D2026-4848

Administrative Panel Decision (November 3, 2026)

<zerofilterstore.com>

ARBITRATION
AND
MEDIATION CENTER

WIPO
WORLD
INTELLECTUAL PROPERTY
ORGANIZATION

# ADMINISTRATIVE PANEL DECISION
## Zero Technologies, LLC v. Ahmet Gokhan Kara
## Case No. D2026-4848

### 1. The Parties

The Complainant is Zero Technologies, LLC, United States of America ("United States"), represented by Baker & Hostetler LLP, United States.

The Respondent is Ahmet Gokhan Kara, Canada, self-represented.

### 2. The Domain Name and Registrar

The disputed domain name <zerofilterstore.com> is registered with GoDaddy.com, LLC (the "Registrar").

### 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on October 23, 2026. On October 26, 2026, the Center transmitted by email to the Registrar a request for registrar verification in connection with the disputed domain name. On October 26, 2026, the Registrar transmitted by email to the Center its verification response disclosing registrant and contact information for the disputed domain name which differed from the named Respondent and contact information in the Complaint. The Center sent an email communication to the Complainant on October 27, 2026, providing the registrant and contact information disclosed by the Registrar, and inviting the Complainant to submit an amendment to the Complaint. The Complainant filed an amendment to the Complaint on October 27, 2026.

The Center verified that the Complaint together with the amendment to the Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy" or "UDRP"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2 and 4, the Center formally notified the Respondent of the Complaint, and the proceedings commenced on October 28, 2026. In accordance with the Rules, paragraph 5, the due date for Response was November 17, 2026. The Response was filed with the Center on October 29, 2026. The Respondent sent an email communication to the Center on October 29, 2026, confirming that the Respondent's filing on October 29, 2026, constituted the Respondent's complete Response.

The Center appointed Adam Taylor as the sole panelist in this matter on November 2, 2026. The Panel finds that it was properly constituted. The Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

**4. Factual Background**

The Complainant has supplied water filtration products under the mark ZEROWATER, and other ZERO-formative marks, for some 25 years.

The Complainant owns a number of ZERO-formative registered trade marks including United States trade mark No. 2,802,616 for ZEROWATER (word), filed on February 25, 1999, registered on January 6, 2004, in class 11, with a first use date of April 2002.

The Complainant has operated a website at "www.zerowater.com" since at least 2002.

The Registrar disclosed contact details in Canada. The Respondent states that he is located in Türkiye.

The Respondent also asserts that, through a Canadian company with which he was associated, the Respondent was involved in the distribution of the Complainant's products in Türkiye between 2014 and 2020.

The Respondent registered the domain name <zerofilteronline.com>[1] on January 13, 2023, allegedly for a Canadian online store, and the disputed domain name on July 20, 2023, allegedly for a United States store.

On July 20, 2023, the Respondent incorporated a Delaware company called Zero Filter Online LLC.

The Respondent, or the Respondent's company, owns the following trade mark registrations for ZEROFILTER ONLINE:

- Canadian trade mark No. TMA 1,292,011 (word), filed July 19, 2023, registered on February 17, 2025, in class 11;

- Turkish trade mark No. 2023/097552 (logo), filed July 28, 2023, registered on January 16, 2025, in classes 6 and 11; and

- United States trade mark No. 7,995,613 (word), filed July 31, 2023, registered on October 21, 2025, in class 11, claiming a first use date of September 2023.

As of July 22, 2023, the domain name <zerofilteronline.com> resolved to a website that was branded with a black/blue "ZEROFILTER ONLINE" logo, and invited users to pre-order water filter packs that were illustrated with product images displaying unbranded filters, with prices in Canadian dollars.

As of September 24, 2023, the disputed domain name resolved to a similar website, with a black/blue "ZEROFILTER STORE" logo and prices in United States dollars. The footer stated: "We are a proudly Owned and Operated U.S Company Located County Of Sussex. Our Company Zero Filter Online LLC. is heavily invested in R&D activities to develop Premium 5 Stage Replacement water filters that fits on certain pitchers and water dispensers."

By October 22, 2026, and at the time of filing of the Complaint, the website at the disputed domain name contained a slightly different "ZERO FILTER STORE" logo, with "zero" containing a stylised "o", and some of the replacement filters were now illustrated with ZEROFILTER ONLINE-branded product images and

---

[1] This domain name is the subject of a separate proceeding between the parties – see *Zero Technologies, LLC v. Ahmet Gokhan Kara*, WIPO Case No. D2026-4899.

packaging. The website also offered ZEROWATER-branded pitchers, dispensers, and other products for sale, as well as third party-branded products.

The Respondent states that, on October 28, 2026, after notice of the Complaints in both proceedings, the Respondent took the following steps on both websites:

1. removal of third-party ZEROWATER-branded products;

2. removal of references to compatibility with the Complainant's products; and

3. retention of the following statements:

- "Zero Filter Online is an independent brand and is not affiliated with ZeroWater ..." (website at the disputed domain name); and

- The Respondent "is not affiliated with any pitcher or dispenser manufacturer" (website at "www.zerofilteronline.com").

**5. Parties' Contentions**

**A. Complainant**

The Complainant contends that it has satisfied each of the elements required under the Policy for a transfer of the disputed domain name.

Notably, the Complainant, having ordered filters from the Respondent's website, contends that they are counterfeit Complainant products. The Complainant notes, amongst other things, that they are sold in packaging similar to that used by the Complainant and that they bear a "ZEROWATER®" screw-on top.

**B. Respondent**

The Respondent contends that the Complainant has not satisfied the elements required under the Policy for a transfer of the disputed domain name.

Notably, the Respondent contends that:

- the Complainant does not plead any registrations for ZERO alone;

- the term "zero" is a weak, descriptive term in the water-filtration field, and is a common English term;

- the distinctive element of the disputed domain name is "zerofilter";

- the Respondent chose a distinct brand, ZEROFILTER ONLINE, for its own online business;

- the Complaint does not address the Respondent's registered rights in three different jurisdictions, which long predate notice of this dispute and are not displaced by the fact that the United States registration is under challenge by the Complainant, and there is no evidence of pretext;

- the July 2023 company/domain name registrations and trade mark applications reflect a genuine business plan and, together with the website use, they constitute a bona fide offering before notice of the disputes;

- the reseller test in *Oki Data Americas, Inc. v. ASD, Inc.*, WIPO Case No. D2001-0903 ("the Oki Data test") is inapplicable as the disputed domain name does not contain the Complainant's trade mark and the Respondent's interest derives from its own registered marks;

- both stores have offered genuine products of other brands, including the Complainant's, and the offering of genuine Complainant-branded goods alongside other products is not cybersquatting;

- the Complainant's allegation of counterfeiting is not supported by evidence;

- the test order sent to the Complainant related to Complainant-branded products only;

- the Respondent did not ship the Complainant's order for the Respondent's own-brand filters;

- the Complainant does not allege that the Complainant-branded pitchers on the Respondent's website are counterfeit;

- this is at most a trade mark dispute between traders in the same field, not a cybersquatting case suitable for the UDRP;

- knowing of a trader in the same field is not bad faith where the registrant adopts a distinct brand of its own, files trade mark applications for it in three jurisdictions at around the same time as the domain names, and trades under that brand;

- the disputed domain name reflects the Respondent's ZEROFILTER… mark, and not the Complainant's ZEROWATER mark, because "water" is omitted;

- the Respondent's removal of the Complainant's branded products from the websites after notice of the Complaints was from an abundance of caution and without admission of liability;

- the fact that the website is in English and uses United States dollars is not an indicator that the Respondent is targeting the Complainant, as the Respondent's company is also incorporated in the United States; and

- the Complainant is guilty of reverse domain name hijacking ("RDNH").

**6. Discussion and Findings**

**A. Identical or Confusingly Similar**

It is well accepted that the first element functions primarily as a standing requirement. The standing (or threshold) test for confusing similarity involves a reasoned but relatively straightforward comparison between the Complainant's trade mark and the disputed domain name. WIPO Overview of WIPO Panel Views on Select UDRP Questions ("WIPO Overview 3.1"), section 1.7.

The Complainant has shown rights in respect of a trade mark or service mark for the purposes of the Policy. WIPO Overview 3.1, section 1.2.1.

The Panel finds that a dominant feature of the relevant mark, namely the term "zero", is recognisable within the disputed domain name. Accordingly, the disputed domain name is confusingly similar to the mark for the purposes of the Policy. WIPO Overview 3.1, section 1.7.

It is irrelevant that, as the Respondent contends, the Complainant does not claim any registrations for "ZERO" alone.

The Respondent further asserts that the term "zero" is "weak", but issues such as the strength of the Complainant's mark are decided under the second and third elements. WIPO Overview 3.1, section 1.7.

Although the addition of other terms (here, "filter" and "store") may bear on assessment of the second and third elements, the Panel finds the addition of such terms does not prevent a finding of confusing similarity between the disputed domain name and the mark for the purposes of the Policy. WIPO Overview 3.1, section 1.8.

The Panel finds the first element of the Policy has been established.

**B. Rights or Legitimate Interests**

Paragraph 4(c) of the Policy provides a list of circumstances in which the Respondent may demonstrate rights or legitimate interests in a disputed domain name.

Although the overall burden of proof in UDRP proceedings is on the complainant, panels have recognised that proving that a respondent lacks rights or legitimate interests in a domain name may result in the difficult task of "proving a negative", requiring information that is often primarily within the knowledge or control of the respondent. As such, where a complainant makes out a prima facie case that the respondent lacks rights or legitimate interests, the burden of production on this element shifts to the respondent to come forward with relevant evidence demonstrating rights or legitimate interests in the domain name (although the burden of proof always remains on the complainant). If the respondent fails to come forward with such relevant evidence, the complainant is deemed to have satisfied the second element. WIPO Overview 3.1, section 2.1.

Having reviewed the available record, the Panel finds the Complainant has established a prima facie case that the Respondent lacks rights or legitimate interests in the disputed domain name. The Respondent has not rebutted the Complainant's prima facie showing and has not come forward with sufficient evidence demonstrating rights or legitimate interests in the disputed domain name such as those enumerated in the Policy or otherwise.

The Respondent relies heavily on its three trade marks for ZEROFILTER ONLINE. However, a respondent's registration of a trade mark corresponding to the disputed domain name will not suffice to establish rights or legitimate interests if the overall circumstances demonstrate it was obtained primarily to circumvent the complainant's assertion of its rights or otherwise prevent the complainant's exercise of its rights. WIPO Overview 3.1, section 2.12.

For the reasons given under the third element below, the Panel considers that, on the balance of probabilities, the Respondent's three trade marks, all filed at around the time of registration of the disputed domain name, were indeed applied for primarily as a defensive move to prevent the Complainant's exercise of its rights, and as part of a scheme calculated to target the Complainant's trade mark.

As to paragraph 4(c)(i) of the Policy, and as further discussed under the third element below, the Panel considers that the Respondent has used the disputed domain name to intentionally attempt to attract, confuse, and profit from Internet users seeking the Complainant's products. Such use of the disputed domain name is not bona fide.

The Panel would add that, while the Respondent formerly sold the Complainant's products on its website at the disputed domain name, i.e., in addition to the Respondent's (allegedly) own-branded replacement filters, the Respondent has specifically contended that "the Oki Data test" is inapplicable, on the grounds that the disputed domain name was allegedly intended to reflect the Respondent's own mark rather than the Complainant's mark. Accordingly, the Panel has not considered the applicability of any reseller-type defence in connection with the former offering of the Complainant's products on the Respondent's website. In any event, the Panel also notes that the Respondent has also purportedly offered third party products bearing third party trade marks.

As to paragraph 4(c)(ii) of the Policy, while the Respondent has provided evidence of registration of a corporate name partly corresponding to the disputed domain name (see section 4 above), all the circumstances indicate that, as in the case of its trade marks filed at around the same time, the Respondent adopted the relevant corporate name specifically to take unfair advantage of the Complainant's rights. Accordingly, the Panel considers that paragraph 4(c)(ii) of the Policy does not apply.

Nor is there any evidence that paragraph 4(c)(iii) of the Policy is relevant in the circumstances of this case.

The Panel finds the second element of the Policy has been established.

**C. Registered and Used in Bad Faith**

In the present case, for the following reasons, the Panel considers that the Respondent has intentionally attempted to attract Internet users to a website for commercial gain by creating a likelihood of confusion with the Complainant's trade mark for the purpose of the sale of competing products and/or the Complainant's own products in accordance with paragraph 4(b)(iv) of the Policy.

First, the Respondent acknowledges that it was aware of the Complainant when it registered the disputed domain name and, indeed, that it was formerly in a six-year business relationship with the Complainant.

Second, the Respondent has supplied no evidence in support of its claim that "zero" is a weak, descriptive term in the water-filtration field.

Third, the Respondent has not explained exactly why it selected the term "zero".

Fourth, while the Respondent is at pains to differentiate between the Complainant's ZEROWATER mark and the Respondent's ZEROFILTER ONLINE mark, to the Panel they are strikingly similar in that both are dominated by the distinctive term "zero", followed by descriptive terms relevant to water filtration, namely "water" and "filter" respectively. Nothing turns on the Respondent's "-online" suffix, nor on its replacement by "store" in the disputed domain name.

Fifth, the Respondent used the disputed domain name for a website offering not only the Respondent's ZEROFILTER ONLINE-branded replacement filters, but also the Complainant's own ZEROWATER-branded pitchers, dispensers and other products, which the Respondent thereafter removed from its website, albeit "without admission".

Sixth, the Respondent's logo is similar to that of the Complainant in that it also uses black/blue font, as well as a stylised letter "o" in "zero".

Seventh, the Respondent's replacement filter packaging is similar to that used by the Complainant for its own replacement filters including: a black background; images of one horizontal and one vertical filter; the term "...ADVANCED FILTRATION" in identical yellow font in a rectangle with rounded corners; and an identical yellow splash at the bottom right with the term "2 REPLACEMENT WATER FILTERS" in similar black font.

For all the above reasons, the Panel does not accept the Respondent chose its own "distinct brand", ZEROFILTER ONLINE, for its own online business, i.e., independently of the Complainant's mark. On the contrary, the evidence on record indicates that the Respondent adopted its name specifically to target the Complainant's mark, and that its July 2023 trade mark filings and company incorporation were defensive moves designed to justify its registration of the disputed domain name (and the domain name <zerofilteronline.com>). Accordingly, the Panel disagrees with the Respondent's assertion that this is "at most" a trade mark dispute, unsuitable for the UDRP.

The Panel is not in a position to assess whether any of the Respondent's products are counterfeit, and indeed it is not necessary for the Panel to do so. It suffices that the Respondent used the disputed domain

name, which is similar to the Complainant's mark, for a website that creates the impression that it is officially associated with the Complainant including by prominent use of a similar mark/logo and images of product packaging similar to that of the Complainant as well as by purporting to offer the Complainant's own goods as well as other similar/related products.

Nothing turns on the disclaimer invoked by the Respondent. While the record contains disclaimer wording, it does not establish that the disclaimer was prominently displayed. The Panel in any case considers that the Respondent's use of such a disclaimer amounts to an admission that users may be confused. WIPO Overview 3.1, section 3.7.

The Panel finds the third element of the Policy has been established.

**7. Decision**

For the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the disputed domain name <zerofilterstore.com> be transferred to the Complainant.

*/Adam Taylor/*
**Adam Taylor**
Sole Panelist
Date: November 3, 2026

# EXHIBIT B

WIPO Case No. D2026-4899
Administrative Panel Decision (November 3, 2026)
<zerofilteronline.com>

ARBITRATION
AND
MEDIATION CENTER

WIPO
WORLD
INTELLECTUAL PROPERTY
ORGANIZATION

# ADMINISTRATIVE PANEL DECISION
## Zero Technologies, LLC v. Ahmet Gokhan Kara
## Case No. D2026-4899

### 1. The Parties

The Complainant is Zero Technologies, LLC, United States of America ("United States"), represented by Baker & Hostetler LLP, United States.

The Respondent is Ahmet Gokhan Kara, Canada, self-represented.

### 2. The Domain Name and Registrar

The disputed domain name <zerofilteronline.com> is registered with GoDaddy.com, LLC (the "Registrar").

### 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on October 27, 2026. On October 28, 2026, the Center transmitted by email to the Registrar a request for registrar verification in connection with the disputed domain name. On October 28, 2026, the Registrar transmitted by email to the Center its verification response disclosing registrant and contact information for the disputed domain name which differed from the named Respondent and contact information in the Complaint. The Center sent an email communication to the Complainant on October 28, 2026, providing the registrant and contact information disclosed by the Registrar, and inviting the Complainant to submit an amendment to the Complaint. The Complainant filed an amendment to the Complaint on October 28, 2026.

The Center verified that the Complaint together with the amendment to the Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy" or "UDRP"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2 and 4, the Center formally notified the Respondent of the Complaint, and the proceedings commenced on October 29, 2026. In accordance with the Rules, paragraph 5, the due date for Response was November 18, 2026. The Response was filed with the Center on October 29, 2026. The Respondent sent an email communication to the Center on October 29, 2026, confirming that the Respondent's filing on October 29, 2026, constituted the Respondent's complete Response.

The Center appointed Adam Taylor as the sole panelist in this matter on November 2, 2026. The Panel finds that it was properly constituted. The Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

**4. Factual Background**

The Complainant has supplied water filtration products under the mark ZEROWATER, and other ZERO-formative marks, for some 25 years.

The Complainant owns a number of ZERO-formative registered trade marks including United States trade mark No. 2802616 for ZEROWATER (word), filed on February 25, 1999, registered on January 6, 2004, in class 11, with a first use date of April 2002.

The Complainant has operated a website at "www.zerowater.com" since at least 2002.

The Registrar disclosed contact details in Canada. The Respondent states that he is located in Türkiye.

The Respondent also asserts that, through a Canadian company with which he was associated, the Respondent was involved in the distribution of the Complainant's products in Türkiye between 2014 and 2020.

The Respondent registered the disputed domain name on January 13, 2023, allegedly for a Canadian online store, and the domain name <zerofilterstore.com>[1] on July 20, 2023, allegedly for a United States store.

On July 20, 2023, the Respondent incorporated a Delaware company called Zero Filter Online LLC.

The Respondent, or the Respondent's company, owns the following trade mark registrations for ZEROFILTER ONLINE:

- Canadian trade mark No. TMA 1,292,011 (word), filed July 19, 2023, registered on February 17, 2025, in class 11;

- Turkish trade mark No. 2023/097552 (logo), filed July 28, 2023, registered on January 16, 2025, in classes 6 and 11; and

- United States trade mark No. 7,995,613 (word), filed July 31, 2023, registered on October 21, 2025, in class 11, claiming a first use date of September 2023.

As of July 22, 2023, the disputed domain name resolved to a website that was branded with a black/blue "ZEROFILTER ONLINE" logo, and invited users to pre-order water filter packs that were illustrated with product images displaying unbranded filters, with prices in Canadian dollars.

As of September 24, 2023, the domain name <zerofilterstore.com> resolved to a similar website, with prices in United States dollars. The footer stated: "We are a proudly Owned and Operated U.S Company Located County Of Sussex. Our Company Zero Filter Online LLC. is heavily invested in R&D activities to develop Premium 5 Stage Replacement water filters that fits on certain pitchers and water dispensers."

By October 27, 2026, some of the replacement filters on the website at the disputed domain name were now illustrated with ZEROFILTER ONLINE-branded product images and packaging. The website also offered ZEROWATER-branded pitchers, dispensers, and other products for sale.

---

[1] This domain name is the subject of a separate proceeding between the parties – see Zero Technologies, LLC v. Ahmet Gokhan Kara, WIPO Case No. D2026-4848.

The Respondent states that, on October 28, 2026, after notice of the Complaints in both proceedings, the Respondent took the following steps on both websites:

1. removal of third-party ZEROWATER-branded products;

2. removal of references to compatibility with the Complainant's products; and

3. retention of the following statements:

- "Zero Filter Online is an independent brand and is not affiliated with ZeroWater …" (website at the disputed domain name); and

- The Respondent "is not affiliated with any pitcher or dispenser manufacturer" (website at "www.zerofilteronline.com").

**5. Parties' Contentions**

**A. Complainant**

The Complainant contends that it has satisfied each of the elements required under the Policy for a transfer of the disputed domain name.

Notably, the Complainant, having ordered filters from the Respondent's website, contends that they are counterfeit Complainant products. The Complainant notes, amongst other things, that they are sold in packaging similar to that used by the Complainant and that they bear a "ZEROWATER®" screw-on top.

**B. Respondent**

The Respondent contends that the Complainant has not satisfied the elements required under the Policy for a transfer of the disputed domain name.

Notably, the Respondent contends that:

- the Complainant does not plead any registrations for ZERO alone;

- the term "zero" is a weak, descriptive term in the water-filtration field, and is a common English term;

- the distinctive element of the disputed domain name is "zerofilter";

- the Respondent chose a distinct brand, ZEROFILTER ONLINE, for its own online business;

- the Complaint does not address the Respondent's registered rights in three different jurisdictions, which long predate notice of this dispute and are not displaced by the fact that the United States registration is under challenge by the Complainant, and there is no evidence of pretext;

- the July 2023 company/domain name registrations and trade mark applications reflect a genuine business plan and, together with the website use, they constitute a bona fide offering before notice of the disputes;

- the reseller test in Oki Data Americas, Inc. v. ASD, Inc., WIPO Case No. D2001-0903 ("the Oki Data test") is inapplicable as the disputed domain name does not contain the Complainant's trade mark and the Respondent's interest derives from its own registered marks;

- both stores have offered genuine products of other brands, including the Complainant's, and offering of genuine Complainant-branded goods alongside other products is not cybersquatting;

- the Complainant's allegation of counterfeiting is not supported by evidence;

- the test order sent to the Complainant related to Complainant-branded products only;

- the Respondent did not ship the Complainant's order for the Respondent's own-brand filters;

- the Complainant does not allege that the Complainant-branded pitchers on Respondent's website are counterfeit;

- this is at most a trade mark dispute between traders in the same field, not a cybersquatting case suitable for the UDRP;

- knowing of a trader in the same field is not bad faith where the registrant adopts a distinct brand of its own, files trade mark applications for it in three jurisdictions at around the same time as the domain names, and trades under that brand;

- the disputed domain name reflects the Respondent's ZEROFILTER… mark, and not the Complainant's ZEROWATER mark, because "water" is omitted;

- the Respondent's removal of the Complainant's branded products from the websites after notice of the Complaints was from an abundance of caution and without admission of liability; and

- the Complainant is guilty of reverse domain name hijacking ("RDNH").

**6. Discussion and Findings**

**A. Identical or Confusingly Similar**

It is well accepted that the first element functions primarily as a standing requirement. The standing (or threshold) test for confusing similarity involves a reasoned but relatively straightforward comparison between the Complainant's trade mark and the disputed domain name. WIPO Overview of WIPO Panel Views on Select UDRP Questions ("WIPO Overview 3.1"), section 1.7.

The Complainant has shown rights in respect of a trade mark or service mark for the purposes of the Policy. WIPO Overview 3.1, section 1.2.1.

The Panel finds that a dominant feature of the relevant mark, namely the term "zero", is recognisable within the disputed domain name. Accordingly, the disputed domain name is confusingly similar to the mark for the purposes of the Policy. WIPO Overview 3.1, section 1.7.

It is irrelevant that, as the Respondent contends, the Complainant does not claim any registrations for "ZERO" alone.

The Respondent further asserts that the term "zero" is "weak", but issues such as the strength of the Complainant's mark are decided under the second and third elements. WIPO Overview 3.1, section 1.7.

Although the addition of other terms (here, "filter" and "online") may bear on assessment of the second and third elements, the Panel finds the addition of such terms does not prevent a finding of confusing similarity between the disputed domain name and the mark for the purposes of the Policy. WIPO Overview 3.1, section 1.8.

The Panel finds the first element of the Policy has been established.

**B. Rights or Legitimate Interests**

Paragraph 4(c) of the Policy provides a list of circumstances in which the Respondent may demonstrate rights or legitimate interests in a disputed domain name.

Although the overall burden of proof in UDRP proceedings is on the complainant, panels have recognised that proving that a respondent lacks rights or legitimate interests in a domain name may result in the difficult task of "proving a negative", requiring information that is often primarily within the knowledge or control of the respondent. As such, where a complainant makes out a prima facie case that the respondent lacks rights or legitimate interests, the burden of production on this element shifts to the respondent to come forward with relevant evidence demonstrating rights or legitimate interests in the domain name (although the burden of proof always remains on the complainant). If the respondent fails to come forward with such relevant evidence, the complainant is deemed to have satisfied the second element. WIPO Overview 3.1, section 2.1.

Having reviewed the available record, the Panel finds the Complainant has established a prima facie case that the Respondent lacks rights or legitimate interests in the disputed domain name. The Respondent has not rebutted the Complainant's prima facie showing and has not come forward with sufficient evidence demonstrating rights or legitimate interests in the disputed domain name such as those enumerated in the Policy or otherwise.

The Respondent relies heavily on its three trade marks for ZEROFILTER ONLINE. However, a respondent's registration of a trade mark corresponding to the disputed domain name will not suffice to establish rights or legitimate interests if the overall circumstances demonstrate it was obtained primarily to circumvent the complainant's assertion of its rights or otherwise prevent the complainant's exercise of its rights. WIPO Overview 3.1, section 2.12.

For the reasons given under the third element below, the Panel considers that, on the balance of probabilities, the Respondent's three trade marks, all filed approximately six months after registration of the disputed domain name, were indeed applied for primarily as a defensive move to prevent the Complainant's exercise of its rights, and as part of a scheme calculated to target the Complainant's trade mark.

As to paragraph 4(c)(i) of the Policy, and as further discussed under the third element below, the Panel considers that the Respondent has used the disputed domain name to intentionally attempt to attract, confuse and profit from Internet users seeking the Complainant's products. Such use of the disputed domain name is not bona fide.

The Panel would add that, while the Respondent formerly sold the Complainant's products on its website at the disputed domain name, i.e., in addition to the Respondent's (allegedly) own-branded replacement filters, the Respondent has specifically contended that "the Oki Data test" is inapplicable, on the grounds that the disputed domain name was allegedly intended to reflect the Respondent's own mark rather than the Complainant's mark. Accordingly, the Panel has not considered the applicability of any reseller-type defence in connection with the former offering of the Complainant's products on the Respondent's website.

As to paragraph 4(c)(ii) of the Policy, while the Respondent has provided evidence of registration of a corporate name corresponding to the disputed domain name (see section 4 above), all the circumstances indicate that, as in the case of its trade marks filed at around the same time, the Respondent adopted the relevant corporate name specifically to take unfair advantage of the Complainant's rights. Accordingly, the Panel considers that paragraph 4(c)(ii) of the Policy does not apply.

Nor is there any evidence that paragraph 4(c)(iii) of the Policy is relevant in the circumstances of this case.

The Panel finds the second element of the Policy has been established.

**C. Registered and Used in Bad Faith**

In the present case, for the following reasons, the Panel considers that the Respondent has intentionally attempted to attract Internet users to a website for commercial gain by creating a likelihood of confusion with the Complainant's trade mark for the purpose of the sale of competing products and/or the Complainant's own products in accordance with paragraph 4(b)(iv) of the Policy.

First, the Respondent acknowledges that it was aware of the Complainant when it registered the disputed domain name and, indeed, that it was formerly in a six-year business relationship with the Complainant.

Second, the Respondent has supplied no evidence in support of its claim that "zero" is a weak, descriptive term in the water-filtration field.

Third, the Respondent has not explained exactly why it selected the term "zero".

Fourth, while the Respondent is at pains to differentiate between the Complainant's ZEROWATER mark and the Respondent's ZEROFILTER ONLINE mark, to the Panel they are strikingly similar in that both are dominated by the distinctive term "zero", followed by descriptive terms relevant to water filtration, namely "water" and "filter" respectively. Nothing turns on the Respondent's "-online" suffix.

Fifth, the Respondent used the disputed domain name for a website offering not only the Respondent's ZEROFILTER ONLINE-branded replacement filters, but also the Complainant's own ZEROWATER-branded pitchers, dispensers and other products, which the Respondent thereafter removed from its website, albeit "without admission".

Sixth, the Respondent's logo is similar to that of the Complainant in that it also uses black/blue font.

Seventh, the Respondent's replacement filter packaging is similar to that used by the Complainant for its own replacement filters including: a black background; images of one horizontal and one vertical filter; the term "…ADVANCED FILTRATION" in identical yellow font in a rectangle with rounded corners; and an identical yellow splash at the bottom right with the term "2 REPLACEMENT WATER FILTERS" in similar black font.

For all the above reasons, the Panel does not accept the Respondent chose its own "distinct brand", ZEROFILTER ONLINE, for its own online business, i.e., independently of the Complainant's mark. On the contrary, the evidence on record indicates that the Respondent adopted its name specifically to target the Complainant's mark, and that its July 2023 trade mark filings and company incorporation were defensive moves designed to justify its registration of the disputed domain name (and the domain name <zerofilterstore.com>). Accordingly, the Panel disagrees with the Respondent's assertion that this is "at most" a trade mark dispute, unsuitable for the UDRP.

The Panel is not in a position to assess whether any of the Respondent's products are counterfeit, and indeed it is not necessary for the Panel to do so. It suffices that the Respondent used the disputed domain name, which is similar to the Complainant's mark, for a website that creates the impression that it is officially associated with the Complainant including by prominent use of a similar mark/logo and images of product packaging similar to that of the Complainant as well as by purporting to offer the Complainant's own goods.

Nothing turns on the disclaimer invoked by the Respondent. While the record contains disclaimer wording, it does not establish that the disclaimer was prominently displayed. The Panel in any case considers that the Respondent's use of such a disclaimer amounts to an admission that users may be confused. WIPO Overview 3.1, section 3.7.

The Panel finds the third element of the Policy has been established.

**7. Decision**

For the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the disputed domain name <zerofilteronline.com> be transferred to the Complainant.

*/Adam Taylor/*
**Adam Taylor**
Sole Panelist
Date: November 3, 2026

# EXHIBIT C

U.S. Trademark Registration No. 7,995,613
ZEROFILTER ONLINE

# United States of America

## United States Patent and Trademark Office

# ZEROFILTER ONLINE

**Reg. No. 7,995,613**

**Registered Oct. 21, 2025**

**Int. Cl.: 11**

**Trademark**

**Principal Register**

Zero Filter Online LLC (DELAWARE LIMITED LIABILITY COMPANY)
16192 Coastal Highway,
Lewes,County of Sussex, DELAWARE 19958

CLASS 11: Drinking water filters; Filters for drinking water; Water filtration and purification units and replacement cartridges and filters therefor

FIRST USE 09-00-2023 ; IN COMMERCE 09-00-2023

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as shown: "ONLINE"

The wording ZEROFILTER ONLINE has no meaning in a foreign language.

The name(s), portrait(s), and/or signature(s) shown in the mark does not identify a particular living individual.

SER. NO. 98-108,911, FILED 07-31-2023

DIRECTOR OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE

# EXHIBIT D

Canadian Trademark Registration No. TMA1,292,011
ZEROFILTER ONLINE

Innovation, Sciences et Développement économique Canada
Office de la propriété intellectuelle du Canada

Innovation, Science and Economic Development Canada
Canadian Intellectual Property Office

# Marque de commerce / Trademark

CERTIFICAT D'ENREGISTREMENT / CERTIFICATE OF REGISTRATION

Numéro de la demande / Application number
2270325

LMC TMA 1,292,011
*Numéro d'enregistrement*
*Registration number*

Date d'enregistrement / Registration date
17 févr/Feb 2025

*La présente certifie que la marque de commerce identifiée sur ce certificat a été enregistrée. L'extrait ci-joint est une copie conforme de l'inscription de son enregistrement.*

*This is to certify that the trademark identified on this certificate has been registered and that the attached extract is a true copy of the record of its registration.*

*Conformément aux dispositions de la Loi sur les marques de commerce, cet enregistrement est sujet à un renouvellement tous les 10 ans à compter de la date d'enregistrement.*

*In accordance with the provisions of the Trademarks Act, this registration is subject to renewal every 10 years from the registration date.*

**ZEROFILTER ONLINE**

*Registraire des marques de commerce*
*Registrar of Trademarks*

Canada

# EXHIBIT E

Turkish Trademark Registration No. 2023/097552
with English translation

TÜRK [PATENT]
TÜRK PATENT VE MARKA KURUMU

# MARKA TESCİL BELGESİ

## No: 2023 097552 - Ticaret - Hizmet

ZEROFILTER
ONLINE

Marka Sahibi

**AHMET GÖKHAN KARA**

Mal / Hizmet Sınıfları

**06, 11**

Bu marka, 6769 sayılı Sınai Mülkiyet Kanunu kapsamında, 28.07.2023 tarihinden itibaren 10 yıl süreyle korunmak üzere, 16.01.2025 tarihinde tescil edilmiştir.

**Prof. Dr. M. Zeki DURAK**
**Başkan**

# MAL / HİZMET SINIFLARI

## Başvuru Numarası: 2023/097552

**06.** Değerli olmayan maden cevherleri.
Barınma, saklama, muhafaza etme, kaplama, sarma, çevreleme, depolama, yerleştirme amaçlı metalden malzemeler ve araçlar: metalden mamul yapılar, metalden inşaat iskeletleri ve dikmeleri, metal kutular, metal ambalajlar, alüminyum folyo, metalden çitler, korkuluklar, metalden tüpler, metal kaplar, madeni depolar, metal nakliye sandıkları, metal portatif merdivenler.
Eleme, filtreleme ve benzeri amaçlar için yapılmış metalden malzemeler.
Elektrik için olmayan madeni kablolar, teller.
Döküm işleri için madeni kalıplar (makine parçası olanlar hariç).
Metalden mamul kapaklar, şişe kapakları.

**11.** Su yumuşatma cihazları, su arıtma cihazları, su arıtma tesisatı, atık arıtma tesisatı.
Akvaryumlar için filtreler ve filtre-motor kombinasyonları.
Pastörize ve sterilize edici makineler.

# English translation of TÜRKPATENT Registration Certificate No. 2023/097552

**Translator's note:** Translation prepared by Respondent (Ahmet Gökhan Kara), from the Turkish original issued by the Turkish Patent and Trademark Office (TÜRKPATENT) and reproduced in this Annex. The translation is not a certified translation. Graphic elements (emblems, the figurative mark and the signature) are described in square brackets. Names, numbers and dates are reproduced as in the original (dates in DD.MM.YYYY format).

## Page 1

[TÜRKPATENT emblem] — TÜRK PATENT — Turkish Patent and Trademark Office

## TRADEMARK REGISTRATION CERTIFICATE

**No: 2023 097552 – Trade – Service**

[Figurative mark as registered:]

(word elements: “ZEROFILTER ONLINE”)

Trademark Owner
**AHMET GÖKHAN KARA**

Classes of Goods / Services
**06, 11**

This trademark has been registered on 16.01.2025, under Industrial Property Law No. 6769, to be protected for a period of 10 years from 28.07.2023.

[signature]
**Prof. Dr. M. Zeki DURAK**
President

# Page 2

## CLASSES OF GOODS / SERVICES

**Application Number:** 2023/097552

**06.** Common metal ores.
Metal materials and articles for sheltering, storing, keeping, coating, wrapping, enclosing, storage and placement purposes: structures made of metal, metal building frames and posts, metal boxes, metal packaging, aluminium foil, metal fences, railings, metal tubes, metal containers, metal tanks, metal shipping crates, metal portable ladders.
Metal materials made for sieving, filtering and similar purposes.
Non-electric cables and wires of common metal.
Moulds of metal for foundry work (excluding those being machine parts).
Lids made of metal, bottle caps.

**11.** Water softening apparatus, water purification apparatus, water purification installations, waste treatment installations.
Filters and filter-motor combinations for aquariums.
Pasteurising and sterilising machines.

# EXHIBIT F

USPTO Office Action (April 2, 2024)
U.S. Application Serial No. 98108911
ZEROFILTER ONLINE

**To:** Nyall Engfield(orders@trademarkraft.com)
**Subject:** U.S. Trademark Application Serial No. 98108911 - ZEROFILTER ONLINE - - ZEROF-009
**Sent:** April 02, 2024 03:08:38 PM EDT
**Sent As:** tmng.notices@uspto.gov

**Attachments**

screencapture-www-collinsdictionary-com-dictionary-english-online-17120848552321

**United States Patent and Trademark Office (USPTO)**
**Office Action (Official Letter) About Applicant's Trademark Application**

**U.S. Application Serial No.** 98108911

**Mark:** ZEROFILTER ONLINE

**Correspondence Address:**
NYALL ENGFIELD
16950 VIA DE SANTA FE 5060-107
RANCHO SANTA FE CA 92067
UNITED STATES

**Applicant:** Zero Filter Online LLC

**Reference/Docket No.** ZEROF-009

**Correspondence Email Address:** orders@trademarkraft.com

# NONFINAL OFFICE ACTION

**Response deadline.** File a response to this nonfinal Office action within three months of the "Issue date" below to avoid abandonment of the application. Review the Office action and respond using one of the links to the appropriate electronic forms in the "How to respond" section below.

**Request an extension.** For a fee, applicant may request one three-month extension of the response deadline prior to filing a response. The request must be filed within three months of the "Issue date" below. If the extension request is granted, the USPTO must receive applicant's response to this letter within six months of the "Issue date" to avoid abandonment of the application.

**Issue date:** April 2, 2024

The referenced application has been reviewed by the assigned trademark examining attorney. Applicant must respond timely and completely to the issue(s) below. 15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

**SEARCH OF USPTO DATABASE OF MARKS**

The trademark examining attorney has searched the USPTO database of registered and pending marks and has found no conflicting marks that would bar registration under Trademark Act Section 2(d). 15 U.S.C. §1052(d); TMEP §704.02.

**SUMMARY OF ISSUES:**

- Domicile Address Requirement
- Disclaimer Requirement

**DOMICILE ADDRESS REQUIREMENT**

**Domicile address cannot be accepted.** Applicant must provide its current domicile street address because the domicile address of record is for a U.S. third-party commercial mail receiving agency (a private business that accepts mail from the U.S. Postal Service on behalf of third parties), as identified by the U.S. Postal Service Coding Accuracy Support System (CASS), which is not an acceptable type of domicile address for a juristic applicant. TMEP §601.01(c)(i). That is, this address does not identify applicant's principal place of business. *See* 37 C.F.R. §§2.2(o)-(p), 2.11(b), 2.189; TMEP §601.01(c)(i). All applications must include an applicant's domicile address. *See* 37 C.F.R. §§2.32(a)(2), 2.189; TMEP §803.05(a).

**Response option(s)**

**Applicant must provide an acceptable domicile street address**; that is, the location of applicant's headquarters where its senior executives or officers ordinarily direct and control applicant's activities. *See* 37 C.F.R. §§2.2(o)-(p), 2.32(a)(2), 2.189; TMEP §803.05(a).

If applicant cannot provide a domicile street address due to an extraordinary situation, applicant may file a petition to the Director to request the Director waive this requirement. *See* 37 C.F.R. §§2.146(a)(5), 2.148; TMEP §1708.01. The petition must include the required fee as well as (a) a verified statement of facts explaining the extraordinary situation, and (b) the state, or foreign equivalent, and country of applicant's domicile, to determine whether applicant must be represented by a U.S.-licensed attorney. *See* 37 C.F.R. §§2.11(a)-(b), 2.146(c)(1); TMEP §1708.01. However, filing a petition is not considered a response to an Office action. *See* 37 C.F.R. §2.146(g); TMEP §1705.06. Applicant must still file a timely response to this Office action to avoid abandonment of the application. The response should indicate that a petition has been filed, specify the reason(s) for filing the petition (i.e., to request a waiver of the domicile address requirement), and request suspension of the application pending disposition of the petition. *See* TMEP §§716.02, 716.02(l), 1705.06.

**Instructions for responding**

**To provide applicant's domicile street address.** After opening the correct Trademark Electronic Application System (TEAS) response form and entering the serial number, (1) answer "yes" to question 5 and click "Continue;" (2) on the "Owner Information" page, in the "Domicile Address" fields, uncheck the box stating the domicile and mailing address are not the same; and (3) below the checkbox provide applicant's domicile street address. The address provided in the "Domicile Address" fields will be hidden from public view. However, any street address listed in the "Mailing Address" fields will be publicly viewable.

**DISCLAIMER REQUIREMENT**

Applicant must disclaim the wording "ONLINE" because it is merely descriptive of an ingredient, quality, characteristic, function, feature, purpose, or use of applicant's goods and/or services. *See* 15 U.S.C. §§1052(e)(1), 1056(a); *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 1251, 103 USPQ2d 1753, 1755 (Fed. Cir. 2012); TMEP §§1213, 1213.03(a).

The attached dictionary evidence shows that "If a company goes online, its services become available on the internet." Thus, the wording merely describes applicant's goods because they may be available on the internet.

Applicant may respond to this issue by submitting a disclaimer in the following format:

**No claim is made to the exclusive right to use "ONLINE" apart from the mark as shown.**

For an overview of disclaimers and instructions on how to provide one using the Trademark Electronic Application System (TEAS), see the Disclaimer webpage.

**RESPONSE GUIDELINES**

For this application to proceed, applicant must explicitly address each refusal and/or requirement in this Office action. For a refusal, applicant may provide written arguments and evidence against the refusal, and may have other response options if specified above. For a requirement, applicant should set forth the changes or statements. Please see the Responding to Office Actions webpage for more information and tips on responding.

The USPTO does not accept emails as responses to Office actions; however, emails can be used for informal communications and are included in the application record. *See* 37 C.F.R. §§2.62(c), 2.191; TMEP §§304.01-.02, 709.04-.05. Please call or email the assigned trademark examining attorney with questions about this Office action.

**How to respond.** File a **response form to this nonfinal Office action** or file a **request form for an extension of time to file a response**.

/Laila Sabagh/
Laila Sabagh
Examining Attorney
LO127--LAW OFFICE 127
(571) 272-8230
Laila.Sabagh@USPTO.GOV

## RESPONSE GUIDANCE

- **Missing the deadline for responding to this letter will cause the application to abandon.** A response or extension request must be received by the USPTO before 11:59 p.m. **Eastern Time** of the last day of the response deadline. Trademark Electronic Application System (TEAS)

system availability could affect an applicant's ability to timely respond. For help resolving technical issues with TEAS, email TEAS@uspto.gov.

- **Responses signed by an unauthorized party** are not accepted and can **cause the application to abandon.** If applicant does not have an attorney, the response must be signed by the individual applicant, all joint applicants, or someone with legal authority to bind a juristic applicant. If applicant has an attorney, the response must be signed by the attorney.

- If needed, **find contact information for the supervisor** of the office or unit listed in the signature block.

https://www.collinsdictionary.com/dictionary/english/online at 03.08.01, 04/02/2024

LANGUAGE TRANSLATOR GAMES SCHOOLS BLOG RESOURCES

Collins

deli

Log In

English | French | German | Italian | Spanish | Portuguese | Hindi | Chinese

English Dictionary | Thesaurus | Word Lists | Grammar | Conjugations | Sentences | Video | Quiz

English Dictionary Sentences Grammar

Definition of 'online'

# online

Word Frequency

Wordle Helper

Scrabble Tools

Quick Word Challenge

Question: 1 - Score: 0 / 5

COLD-BLOODED ANIMALS











**Collins** COBUILD

(ɒnlaɪn) also **on-line**

1. ADJECTIVE A2

If a company goes **online**, its services become available on the internet.

[*business, computing*]

*...the first bank to go online.*

*...an online shopping centre.*

*...an online catalogue.*

**2.** ADJECTIVE A2

If you are online, your computer is connected to the internet. Compare offline.

[computing]
*You can chat to other people who are online.*

Online is also an adverb.

*...the cool stuff you find online.*

**3.** ADJECTIVE A2

If something comes online, it starts to be used or becomes available.

*The technology could take years to come online.*
*The new-season collection came online this month including print trousers in African fabrics.*

**4.** ADJECTIVE A2

If a power station or other source of energy comes online, it starts to be part of a distribution network.

*The nuclear power plant will not come online again before the end of December.*




2024 Senior Stimulus Is Here

**5.** on line

Collins COBUILD Advanced Learner's Dictionary. Copyright © HarperCollins Publishers

**Video: pronunciation of**

9 weird and wonderful collective nouns

Uncover the fascinating origins of English collective nouns, from medieval inspirations to modern-day creations






# online

British English pronunciation




American English pronunciation












• You may also like •

WALKABLE LOCATION
Overlook at Fairfax Boulevard
Fairfax, VA
2-Level Condos from the $600Ks
& Townhomes from the $800Ks







## online

Word Frequency ●●●●○

**in British English**

*or* on-line (ˈɒnˌlaɪn)

ADJECTIVE

1. of or relating to the internet
   *online shopping*
2. of, relating to, or concerned with a peripheral device that is directly connected to and controlled by the central processing unit of a computer
3. occurring as part of, or involving, a continuous sequence of operations, such as a production line

ADVERB

4. while connected to a computer or the internet
5. See come online

See offline

*Collins English Dictionary. Copyright © HarperCollins Publishers*

## online

Word Frequency ●●●●○

**in American English**

(ˈɑnˈlaɪn)

ADJECTIVE

1. designating or of equipment directly controlled by the central processing unit of a computer


NEW 4-LEVEL TOWNHOMES
& 2-LEVEL CONDOS:
WALKABLE LOCATION
Overlook at Fairfax Boulevard
Fairfax, VA
2-Level Condos from the $600Ks
& Townhomes from the $800Ks



1. designating or of equipment directly controlled by the central processing unit of a computer
2. connected to and ready to receive data from or transmit data to a computer or computer network
3. available on or done through a computer network

ADVERB

4. on or by means of a computer network

*Also* ˈon-ˈline

*Webster's New World College Dictionary, 4th Edition. Copyright © 2010 by Houghton Mifflin Harcourt. All rights reserved.*

NEW 4-LEVEL TOWNHOMES
& 2-LEVEL CONDOS:
WALKABLE LOCATION
Overlook at Fairfax Boulevard
Fairfax, VA
2-Level Condos from the $600Ks
& Townhomes from the $800Ks



NEW 4-LEVEL TOWNHOMES
& 2-LEVEL CONDOS:
WALKABLE LOCATION
Overlook at Fairfax Boulevard
Fairfax, VA
2-Level Condos from the $600Ks
& Townhomes from the $800Ks



---

## online

Word Frequency ●●●●○

**in American English**

(ˈɑnˌlaɪn, ˈɔn-)

ADJECTIVE

1. operating under the direct control of, or connected to, a main computer (opposed to *offline*)
2. connected by computer to one or more other computers or networks, as through a commercial electronic information service or the Internet
3. using a computer
4. *Radio (of a network)*
   supplying affiliated stations with all or a substantial part of their programming
5. *Television*
   of or pertaining to the final editing of a videotaped program
6. done or accomplished while in operation or active service
   *online maintenance*
7. located on major routes or rail lines
   *online industries*

ADVERB

8. with or through a computer, esp. over a network

Also: on-line, on line Compare offline

*Most material © 2005, 1997, 1991 by Penguin Random House LLC. Modified entries © 2019 by Penguin Random House LLC and HarperCollins Publishers Ltd*

**Word origin**

[1945–50]

**Examples of 'online' in a sentence**

## online

⚠ *These examples have been automatically selected and may contain sensitive content that does not reflect the opinions or policies of Collins, or its parent company HarperCollins.*
*We welcome feedback: report an example sentence to the Collins team. Read more...*

*We will ensure these are applied for all future polls and online services.*
THE GUARDIAN (2017)

*What he says online is amplified.*
THE GUARDIAN (2017)

*Rapid tests are freely available in pharmacies and online.*
THE GUARDIAN (2021)

*The speech is online here.*
THE GUARDIAN (2016)

*These stretches are quick and easy to do, and easy to access online.*
THE GUARDIAN (2021)

*Now most clients book me directly online.*
THE SUN (2016)

*The booking form is also available online.*
THE SUN (2008)

*Some things should be available instantly online and others monthly or annually.*
TIMES, SUNDAY TIMES (2006)

*Call us or go online and see how you can avoid large repair bills today.*
TIMES, SUNDAY TIMES (2009)

*We chat online but my girlfriend doesn't realise how much.*
THE SUN (2014)

NEW 4-LEVEL TOWNHOMES & 2-LEVEL CONDOS: WALKABLE LOCATION
Overlook at Fairfax Boulevard
Fairfax, VA
2-Level Condos from the $600Ks
& Townhomes from the $800Ks












COBUILD Collocations

## online




online payment
online poll
online profile
online provider
online purchase
online quiz
online registration
online resource
online retailer
online revenue

Show more...

Trends of

## online

View usage for: All Years






Source: Google Books Ngram Viewer

In other languages

## online

British English: online /ˈɒnˌlaɪn/ adjective

If you are *online*, your computer is connected to the Internet.

*You can chat to other people who are online.*

American English: online /ɒnˈlaɪn/
Arabic: متصل بالإنترنت
Brazilian Portuguese: online
Chinese: 在线的
Croatian: online
Czech: online počítač
Danish: online
Dutch: online
European Spanish: en línea
Finnish: online-
French: en ligne
German: online
Greek: συνδεδεμένος ηλεκτρονικά
Italian: online
Japanese: オンラインの
Korean: 온라인의
Norwegian: tilkoplet
Polish: online
European Portuguese: online
Romanian: online
Russian: при соединении с Интернетом
Latin American Spanish: en línea
Swedish: online
Thai: ออนไลน์, ซึ่งเชื่อมต่อกับอินเทอร์เน็ต
Turkish: internet
Ukrainian: онлайн
Vietnamese: trực tuyến

British English: online /ˌɒnˈlaɪn/ adverb

If you do something *online*, you do it while connected to a computer or the Internet.

*I buy most of my clothes and shoes online.*

American English: online /ɒnˈlaɪn/
Arabic: متصلاً بالإنترنت
Japanese: オンラインで
Korean: 온라인으로









Brazilian Portuguese: online
Chinese: 在线
Croatian: na internetu
Czech: online
Danish: online
Dutch: online
European Spanish: en línea
Finnish: verkossa (tai internetissä)
French: en ligne
German: online
Greek: στο διαδίκτυο
Italian: online
Norwegian: påkoplet
Polish: online
European Portuguese: online
Romanian: online
Russian: при соединении с Интернетом
Latin American Spanish: en línea
Swedish: online
Thai: เมื่อออนไลน์, เมื่อเชื่อมต่อกับอินเทอร์เน็ต
Turkish: hatta bilgisayar
Ukrainian: у мережі
Vietnamese: trực tuyến

Translate your text for free

**Browse alphabetically**

## online

onlap
onlay
onliest
**online**
online access
online account
online activity

All ENGLISH words that begin with 'O'

**Related terms of**

## online

on-line catalog
on-line data processing
online ad
book online
buy online

View more related words

**Source**

Definition of **online** from the Collins English Dictionary
Read about the team of authors behind Collins Dictionaries.

• New from Collins •








Quick Word Challenge
Question: 1 • Score: 0 / 5
VEGETABLES
Drag the correct answer into the box.
leek
lettuce
Brussels sprout
tomato
NEXT


Apr 02, 2024
Word of the day
sashay
If someone sashays , they walk in a graceful but rather noticeable way.
SEE FULL DEFINITION
SEE PREVIOUS WORDS


NEW 4-LEVEL TOWNHOMES & 2-LEVEL CONDOS: WALKABLE LOCATION
Overlook at Fairfax Boulevard
Fairfax, VA
2-Level Condos from the $600Ks
& Townhomes from the $800Ks


NEW 4-LEVEL TOWNHOMES & 2-LEVEL CONDOS: WALKABLE LOCATION
Overlook at Fairfax Boulevard
Fairfax, VA
2-Level Condos from the $600Ks
& Townhomes from the $800Ks


vistaprint

Pulte HOMES

This page in

English

FAQS

Related Links

Browse all official

English Dictionary

Sentences

Grammar

Cookies Settings

Terms & Conditions

Privacy Policy

California Privacy Rights

Do Not Sell My Personal Information

Security

About Us

© Collins 2024

**United States Patent and Trademark Office (USPTO)**

# USPTO OFFICIAL NOTICE

Office Action (Official Letter) has issued
on April 2, 2024 for
**U.S. Trademark Application Serial No. 98108911**

A USPTO examining attorney has reviewed your trademark application and issued an Office action. You must respond to this Office action to avoid your application abandoning. Follow the steps below.

**(1)** **Read the Office action**. This email is NOT the Office action.

**(2) Respond to the Office action by the deadline** using the Trademark Electronic Application System (TEAS). Your response, or extension request, must be received by the USPTO on or before 11:59 p.m. **Eastern Time** of the last day of the response deadline. Otherwise, your application will be abandoned. See the Office action itself regarding how to respond.

**(3) Direct general questions** about using USPTO electronic forms, the USPTO website, the application process, the status of your application, and whether there are outstanding deadlines to the Trademark Assistance Center (TAC).

After reading the Office action, address any question(s) regarding the specific content to the USPTO examining attorney identified in the Office action.

## GENERAL GUIDANCE

- **Check the status of your application periodically** in the Trademark Status & Document Retrieval (TSDR) database to avoid missing critical deadlines.

- **Update your correspondence email address** to ensure you receive important USPTO notices about your application.

- **Beware of trademark-related scams**. Protect yourself from people and companies that may try to take financial advantage of you. Private companies may call you and pretend to be the USPTO or may send you communications that resemble official USPTO documents to trick you. We will never request your credit card number or social security number over the phone. Verify the correspondence originated from us by using your serial number in our database, TSDR, to confirm that it appears under the "Documents" tab, or contact the Trademark Assistance Center.

- **Hiring a U.S.-licensed attorney.** If you do not have an attorney and are not required to

have one under the trademark rules, we encourage you to hire a U.S.-licensed attorney specializing in trademark law to help guide you through the registration process. The USPTO examining attorney is not your attorney and cannot give you legal advice, but rather works for and represents the USPTO in trademark matters.